IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PHILLIP W. FIELDS,                    )
                                      )
          Plaintiff,                  )
                                      )
v.                                    )          Civil Action No. 3:15CV455–HEH
                                      )
DAVID ROBINSON, *et al.*,             )
                                      )
          Defendants.                 )

**MEMORANDUM OPINION**
**(Granting Motion for Summary Judgment)**

Phillips W. Fields, a Virginia inmate proceeding *pro se* and *in forma pauperis*,

filed this 42 U.S.C. § 1983 action.  Fields alleges, *inter alia*, that the Defendants[1] have

unlawfully burdened his religious exercise by prohibiting him from participating in the

Common Fare diet unless he picks up a requisite number of trays and refrains from

giving his Common Fare meals to other inmates.  Specifically, Fields makes the

following claims for relief:

> Claim 1      By removing Fields from the Common Fare diet, Defendants
> denied Fields a diet consistent with his religious precepts in
> violation of his rights under (a) the Religious Land Use and

---

[1] Fields names as Defendants:  David Robinson, Chief of Corrections Operations for the Virginia Department of Corrections ("VDOC"); Harold Clarke, the Director of the VDOC; Tracy Chumura, the Housing and Program Manager for Saint Brides Correctional Center ("SBCC"); Tracy Ray, the Warden of SBCC; Gregory Holloway, the Regional Administrator; and Rick White the Assistant Warden of SBCC.

Institutionalized Person Act[2] ("RLUIPA") and (b) the First
Amendment.[3]

Claim 2    In order to receive the Common Fare diet, which accommodates
Fields's religious dietary needs, Defendants require that Fields pick
up seventy-five percent of his meal trays.  This requirement
frustrates Fields's ability to fast and violates his rights under
(a) RLUIPA and (b) the First Amendment.

Claim 3    In order to receive the Common Fare diet, Defendants require that
Fields not give his meals to other inmates.  This requirement
frustrates Fields's religious desire to be charitable and violates his
rights under (a) RLUIPA and (b) the First Amendment.

Claim 4    In order to receive the Common Fare diet, Defendants require that
Fields not give his meals to other inmates.  This requirement
frustrates Fields's religious desire to not be wasteful and violates
his rights under (a) RLUIPA and (b) the First Amendment.

The matter is before the Court on Defendants' Motion for Summary Judgment.  For the

reasons set forth below, the Motion for Summary Judgment will be granted.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law."  Fed. R. Civ. P. 56(a).  It is the responsibility of the party seeking summary

judgment to inform the court of the basis for the motion, and to identify the parts of the

record which demonstrate the absence of a genuine issue of material fact.  *See Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

burden of proof at trial on a dispositive issue, a summary judgment motion may properly

---

[2] Religious Land Use and Institutionalized Persons Act ("RLUIPA") of 2000, 42 U.S.C.
§§ 2000cc *et seq.*

[3] "Congress shall make no law respecting an establishment of religion, or prohibiting the free
exercise thereof . . . ."  U.S. Const. amend. I.

be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)). In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere "'*scintilla* of evidence'" will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)).

In support of their Motion for Summary Judgment, Defendants rely upon the affidavit of Tracy Chumura, the Housing and Program Manager at SBCC (Mem. Supp. Mot. Summ. J. Ex. 1 ("Chumura Aff.," ECF No. 22–1), and a copy of Fields's Common Fare Diet Agreement (*id.* Encl. A). In opposition, Fields submitted his own declaration ("Fields Decl.," ECF No. 24). In light of the foregoing submissions, the following facts are established for the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Fields.

## II. UNDISPUTED FACTS

Fields is an Orthodox Sunni Muslim inmate confined in SBCC. (Fields Decl. ¶ 4;

Compl. 2.)[4] In 2013, Fields submitted a request to participate in the Common Fare diet

"because it served food consistent with [his religious] beliefs." (Fields Decl. ¶ 5.)

The "Common Fare is a diet designed to meet the religious needs of offenders.

Offenders sign an agreement when they are approved for participation in the Common

Fare diet which requires that they only retrieve Common Fare trays and that they attend

religious services. If an offender is found to have broken the Common Fare agreement,

they are recommended for Common Fare suspension." (Chumura Decl. ¶ 4.)

Additionally, Fields's Common Fare Agreement required that he pick up "a minimum of

seventy-five percent of [the] meals served per month." (Common Fare Agreement 1.)

The Common Fare Agreement further prohibited Fields from "giving away or trading a

Common Fare food item," and "eating, trading or possessing unauthorized food items

from the main [food] line." (*Id.* at 1.)

On October 13, 2014, Fields was observed giving another offender food items

from his Common Fare tray. (Chumura Decl. ¶ 5.) Fields was referred to the Internal

Classification Authority ("ICA") for possible suspension from the Common Fare diet.

(*Id.*) At the conclusion of the ICA hearing, the ICA recommended removing Fields from

the Common Fare diet for six months. (*Id.* ¶ 8.) Chumura approved that

recommendation. (*Id.*)

---

[4] The Court corrects the capitalization and spelling in the quotations from the parties' submissions.

After the completion of his six-month suspension, Field could have requested to be reinstated to the Common Fare diet. (*Id.* ¶ 9.) Fields has not requested to be reinstated to the Common Fare diet. (*Id.*)

Fields represents that he did not request to be reinstated to the Common Fare diet because the Common Fare Agreement "restricted so many different acts of worship as opposed to the one benefit of the religious diet . . . ." (Fields Decl. ¶ 11.) Specifically, Fields contends that the Common Fare Agreement impairs his religious exercises of engaging in "voluntary fasts," being charitable, and avoiding "wastefulness." (*Id..*)

## III. RLUIPA AND FREE EXERCISE CLAIMS

### A. RLUIPA

RLUIPA provides, in pertinent part, that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—
> **(1)** is in furtherance of a compelling governmental interest; and
> **(2)** is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a). Thus, to begin, Fields must demonstrate that Defendants' policies impose a "substantial burden" on his religious exercise. In determining if Fields has met this standard, the Court must answer two questions: "(1) Is the burdened activity 'religious exercise,' and if so (2) is the burden 'substantial'?" *Adkins v. Kaspar*, 393 F.3d 559, 567 (5th Cir. 2004); *see Couch v. Jabe*, 679 F.3d 197, 200–01 (4th Cir. 2012) (employing similar two-part inquiry).

**B.**   **Whether the Burdened Activities Are a Religious Exercise**

"RLUIPA defines the term 'religious exercise' broadly to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Couch*, 679 F.3d at 200 (quoting 42 U.S.C. § 2000cc–5(7)(A)).   Arguably, four religious exercises are implicated by Fields's Complaint: (1) Fields's desire to consume a diet consistent with his religion; (2) Fields's desire to engage in voluntary fasting; (3) Fields's desire to be charitable;  and, (4) Fields's desire to avoid being wasteful.  Given RLUIPA's broad definition of religious exercise, the Court assumes these activities constitute religious exercise.  *See Whitehouse v. Johnson*, No. 1:10cv1175 (CMH/JFA), 2011 WL 5843622, at *3 (E.D. Va. Nov. 18, 2011) (assuming inmate's enrollment in seminary course constituted religious exercise for purposes of RLUIPA).

**C.**   **Fields Fails to Demonstrate a Substantial Burden on His Religious Exercise**

**1.**   **Applicable Law**

RLUIPA fails to define the term substantial burden.  *See Couch*, 679 F.3d at 200. The United States Court of Appeals for the Fourth Circuit determined that the Supreme Court's jurisprudence interpreting the Free Exercise Clause provides guidance on the issue.  *See Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006).  Thus, the Fourth Circuit has explained that a substantial burden

> is one that put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs, or one that forces a person to choose between following the precepts of h[is] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of h[is] religion . . . on the other hand.

*Couch*, 679 F.3d at 200 (alterations and omission in original) (quoting *Lovelace*, 472 F.3d at 187). In conducting the substantial burden inquiry, the plaintiff "is not required . . . to prove that the exercise at issue is required by or essential to his [or her] religion." *Krieger v. Brown*, 496 F. App'x 322, 325 (4th Cir. 2012) (citing *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005)). Nevertheless, "at a minimum the substantial burden test requires that a RLUIPA plaintiff demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice." *Smith v. Allen*, 502 F.3d 1255, 1278 (11th Cir. 2007) (citing *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004));[5] *see Krieger*, 496 F. App'x at 326 (affirming grant of summary judgment where inmate failed to "show that the deprivation of an outdoor worship circle and the requested sacred items modified his behavior and violated his religious beliefs" (citing *Lovelace*, 472 F.3d at 187)). Thus, no substantial burden occurs if the government action merely makes the "religious exercise more expensive or difficult," but fails to pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his religion. *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 739 (6th Cir. 2007).

Two cases from the Fourth Circuit illustrate a plaintiff's responsibility with respect to demonstrating a substantial burden. In *Couch*, the plaintiff "testified that the primary religious texts of Islam command that he grow a beard and that the refusal to maintain a beard is a sin comparable in severity to eating pork." *Couch*, 679 F.3d at 200.

---

[5] In *Sossamon v. Texas*, 563 U.S. 277, 293 (2011), the Supreme Court abrogated *Smith*'s ultimate holding that RLUIPA allows for monetary damages against state officials acting in their official capacity.

The VDOC's grooming policy prohibited inmates from growing beards and enforced this rule by placing a noncompliant inmate in a program that "restricted or limited [the inmate's] access to personal property, movement rights, the right to eat and associate with others, recreation time, and visitation time." *Id.* at 199. The Fourth Circuit concluded that VDOC's grooming policy and enforcement mechanism "fit squarely within the accepted definition of 'substantial burden'" because it placed substantial pressure on the plaintiff to modify his behavior and violate his beliefs. *Id.* at 200–01 (citing *Warsoldier v. Woodford*, 418 F.3d 989, 995–96 (9th Cir. 2005)).

In *Krieger*, the Fourth Circuit declined to find an inmate had demonstrated a substantial burden where prison officials denied "his requests for an 'outdoor worship circle' and certain 'sacred items' related to his religious practice of Asatru." *Krieger*, 496 F. App'x at 322. The plaintiff "asserted that deprivation of the outdoor worship circle would require him to pray indoors, and that the 'Blot' ceremony is '*best* performed outdoors.'" *Id.* at 325 (emphasis added). The Fourth Circuit concluded that the mere denial of the optimal manner for performing the "Blot" ceremony could not demonstrate a substantial burden where the plaintiff "failed to offer any explanation regarding the reason why indoor worship would compromise his religious beliefs." *Id.* Similarly, the inmate failed to demonstrate a substantial burden with respect to the denial of additional sacred items simply by the "blanket assertion" that "the sacred items were 'necessary' to perform 'well-established rituals.'" *Id.* at 326. The Fourth Circuit noted that plaintiff "did not identify those rituals, or explain why the absence of the sacred items had an impact on the rituals and violated his beliefs." *Id.*

8

*Krieger* illuminates another consideration in conducting the substantial burden inquiry. The availability to an inmate, in the most general sense, of other means to practice his or her  faith is not relevant to the RLUIPA substantial burden inquiry. *Al–Amin v. Shear*, 325 F. App'x 190, 193 (4th Cir. 2009). "Nevertheless, courts properly consider whether the inmate retains other means for engaging in the particular religious activity, such as the "Blot" ceremony, in assessing whether a denial of the inmate's preferred method for engaging that religious exercise imposes a substantial burden." *Shabazz v. Va. Dep't Corr.*, 3:10CV638, 2013 WL 1098102, at *7 (E.D. Va. Mar. 15, 2013) (citing *Krieger*, 496 F. App'x at 326; *Coleman v. Governor of Mich.*, 413 F. App'x 866, 875–76 (6th Cir. 2011)).  Thus, an inmate failed to demonstrate the denial of additional group study time imposed a substantial burden upon his religious exercise where prison officials already provided three hours of group study and worship time and allowed inmate to study in his cell. *See Van Wyhe v. Reisch*, 581 F.3d 639, 656–57 (8th Cir. 2009).  Similarly, the United States Court of Appeals for the Sixth Circuit concluded that prison policies which limited the inmates' access to religious radio and television broadcasts failed to substantially burden the inmates' religious exercise because the inmates "may receive religious literature via the mail and may receive visitors at the prison to discuss their religious beliefs." *Coleman*, 413 F. App'x at 876.  As explained below, in light of the foregoing principles, Fields fails to demonstrate any substantial burden upon his religious exercise.

**2.      Religious Diet**

Fields has submitted evidence that indicates that the Common Fare diet provides food consistent with his religious beliefs. Fields, however, fails to direct the Court to any evidence that reflects the regular diet at SBCC is not consistent with his religious beliefs and forces him to consume foods that violate his religious tenets. *Shabazz v. Johnson*, No. 3:12CV282, 2015 WL 4068590, at *10 (E.D. Va. July 2, 2015) (explaining no substantial burden exists when inmate can discard food "at odds with" his religious diet (citing *Muhammad v. Mathena,* No. 7:14–cv–00134, 2015 WL 300363, at *3 (W.D.Va. Jan. 22, 2015)). Accordingly, Fields fails to demonstrate that his suspension from the Common Fare diet substantially burdens his religious exercise.

Moreover, even if one assumed the lack of a Common Fare diet substantially burdened Fields's religious exercise, any RLUIPA claim would fail, as the burden on Fields's religious exercise flows from Fields's own failure to reapply for the diet, rather than any state action. *Smith v. U.S. Cong.*, No. 3:12CV45, 2015 WL 1011545, at *13 (E.D. Va. Mar. 6, 2015) (emphasizing that "the plaintiff must demonstrate that a government practice, rather than some other consideration not attributable to the government, imposes the substantial burden on his or her religious exercise" (citing *Adkins*, 393 F.3d at 571)). Accordingly, Claim 1(a) will be dismissed.

Furthermore, as explained below, Fields fails to demonstrate that the requirements for participating in the Common Fare diet substantially burden his religious desires to fast, be thrifty, and be charitable.

## 2.    Fasting, Charity, and Avoiding Wastefulness

Fields asserts the restrictions of the Common Fare Agreement "put substantial pressure [on me] to modify my normal practice of the religion with respect to voluntary fasting, giving away unwanted food in charity, and observing the prohibition of wastefulness in my religion." (Resp. Mot. Summ. J. 6, ECF No. 26.) The evidence and common sense simply do not support this assertion.

With respect to fasting, Fields is permitted to miss twenty-five percent of his meals per month. Thus, Fields can fast for a week every month if he so desires. Fields fails to direct the Court to any evidence that suggests his religious beliefs require that he fast for this significant number of meals. Thus, Fields fails to demonstrate Defendants' policies substantially burden his ability to fast. *Van Wyhe*, 581 F.3d at 656–57 (concluding that an inmate failed to demonstrate that the denial of additional group study time imposed a substantial burden upon his religious exercise where prison officials already provided three hours of group study and worship time and allowed inmate to study in his cell); *Coleman*, 413 F. App'x at 876 (holding that prison policies that limited the inmates' access to religious radio and television broadcasts failed to substantially burden the inmates' religious exercise because the inmates "may receive religious literature via the mail and may receive visitors at the prison to discuss their religious beliefs"). Accordingly, Claim 2(a) will be dismissed.

Next, Fields contends that the inability to give food away from his Common Fare tray substantially burdens his religious desire to be charitable. "This is not a case where the actions of prison officials have completely prevented an inmate from participating in

11

a religious ritual or practicing a tenet of his or her faith. Rather, Defendants' current policies limit one method for" Fields to be charitable "while allowing [Fields] ample, if not unlimited, opportunities to engage in that religious practice." *Smith*, 2015 WL 1011545, at *14 (citations omitted). Although Fields may not be able to give away his government-provided food, he fails to suggest that he cannot use his own funds to support charities and other organizations. *See Living Water Church of God*, 258 F. App'x at 739 (concluding no substantial burden imposed where defendants' policies simply make the religious exercise "more expensive or difficult"). As Fields fails to demonstrate his religious desire to be charitable has been substantially burdened, Claim 3(a) will be dismissed.

Finally, Fields asserts that preventing him from giving away his unwanted food interferes with his religious desire to not be wasteful. Fields has ample opportunities to avoid being wasteful of the food provided. If Fields is not hungry or not inclined to eat the food provided on a Common Fare meal, the VDOC provides him with ample opportunity to skip a quarter of his meals. Additionally, if Fields does not wish to waste some of the food on his tray, he should simply eat it. Thus, Fields fails to "demonstrate that a government practice, rather than some other consideration not attributable to the government, imposes the substantial burden on his . . . religious exercise." *Smith* 2015 WL 1011545, at *13 (citing *Adkins*, 393 F.3d at 571). As Fields fails to demonstrate that Defendants substantially burdened his religious desire to not be wasteful, Claim 4(a) will be dismissed.

### D.     Free Exercise Claims

Similar to RLUIPA, in order for Fields to survive summary judgment for his First Amendment claims, Fields must demonstrate that Defendants' conduct substantially burdened his religious exercise. *Whitehouse*, 2011 WL 5843622, at \*5. "RLUIPA provides considerably more protection for an inmate's religious exercise than does the Free Exercise Clause of the Constitution of the United States." *Id.* at \*5 (citing *Lovelace*, 472 F.3d at 186). Thus, "[w]here an inmate has not put forth sufficient evidence under RLUIPA to demonstrate a substantial burden on his religious exercise, his claim fails under the Free Exercise Clause of the First Amendment as well." *Van Wyhe*, 581 F.3d at 657–58 (citing *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008)). As explained above, Fields has failed to demonstrate a substantial burden on his religious exercise with respect to his RLUIPA claims set forth in Claims 1(a) though 4(a). Thus, his related Free Exercise claims in Claims 1(b) through 4(b) also fail. Accordingly, Claims 1(b), 2(b), 3(b), and 4(b) will be dismissed.

## IV.     CONCLUSION

For the forgoing reasons, Defendants' Motion for Summary Judgment (ECF No. 21) will be granted. Fields's claims will be dismissed. Fields's Motion for Summary Judgment (ECF No. 25) will be denied. The action will be dismissed.

An appropriate Order shall accompany this Memorandum Opinion.

/s/

HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE

Date: Jan. 19, 2017
Richmond, Virginia

13